# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

JERMELLE ENGLISH JR.,

    *Plaintiff,*

v.                                    Case No.:  2:26-cv-1239

OFFICER MICHAEL VENCES,
OFFICER LUKE COURTIER,
OFFICER KEVIN ROEPKE, and
THE CITY OF KENOSHA,

    *Defendants.*

## COMPLAINT

NOW COMES Plaintiff Jermelle English Jr., by and through undersigned counsel, and brings this Complaint against Defendants Officer Michael Vences, Officer Luke Courtier, and Officer Kevin Roepke (in their individual and official capacities as officers of the Kenosha Police Department), and the City of Kenosha, and alleges as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3), which provides jurisdiction for civil rights actions brought under 42 U.S.C. § 1983.

1

3. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as Plaintiff's federal claims.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred within this judicial district.

**PARTIES**

5. Jermelle English Jr. (hereinafter referred to as "English") is a natural person who is a citizen and resident of 2409 81st Street Kenosha, WI 53143.

6. Officer Michael Vences (hereinafter referred to as "Officer Vences") at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.

7. Officer Luke Courtier (hereinafter referred to as "Officer Courtier") at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.

8. Officer Kevin Roepke (hereinafter referred to as "Officer Roepke") at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.

9. The City of Kenosha (hereinafter referred to as "City of Kenosha") is an incorporated municipality and public entity responsible for the safety and welfare of its residents and/or visitors.

10. The City of Kenosha is incorporated under Wisconsin Statutes Chapter 62, with an office located at 625 52nd St, Kenosha, Wisconsin, 53140.

2

11. The City of Kenosha has a legal obligation under Wis. Stat. § 895.46 to satisfy any judgment entered against Officer Vences, Officer Courtier, and/or Officer Roepke if it is determined that any of them were acting under the color of state law and within the scope of their employment at the time of the incident.

12. Plaintiff sues each and all defendants in both their individual and official capacities.

## CONSTITUTIONALLY PROTECTED INTERESTS

13. As a citizen of the United States, Plaintiff Jermelle English Jr. is entitled to be free from the use of excessive force by law enforcement officers, as guaranteed by the Fourth Amendment to the United States Constitution. He is further protected under the Fourteenth Amendment from actions by state actors that are malicious, conducted with reckless disregard, or show deliberate indifference to his constitutional rights.

14. The actions of the Defendant officers, as set forth below, were taken under color of state law and in violation of these clearly established constitutional protections. Their conduct was malicious, objectively unreasonable, and undertaken with reckless disregard or deliberate indifference to Plaintiff's rights, thereby violating the Fourth and Fourteenth Amendments to the United States Constitution.

## STATEMENT OF RELEVANT FACTS

15. On July 20, 2023, around 11 p.m., English, Shaniya Boyd, and their one-year-old child were dining out at the Applebee's restaurant in Kenosha to enjoy a pleasant evening.

16. Concurrently, the Kenosha Police Department ("KPD") responded to a vehicle collision at the intersection of Highway 31 (Green Bay Road) and Highway 50, where a rollover crash between two vehicles had occurred. Several individuals from the red sedan fled the crash scene on foot, heading westbound toward nearby businesses, including Applebee's.

3

17. Subsequently, KPD officers responded to Applebee's based on witness statements and suspicions that the fleeing occupants may have entered the restaurant. Officers began checking patrons and the men's restroom for potential suspects.

18. During the course of investigating the restaurant for the fleeing suspects, Officer Courtier directed officers' attention to English based on vague similarities to the suspect description. English was lawfully seated at a booth near the south wall of the restaurant and had been there for an extended period of time, as later confirmed by restaurant employees.

19. In a distressing turn of events, English, while holding his one-year-old child, was seized and subjected to a physical escort hold by Officer Vences, which quickly escalated into a physical struggle. He screamed "Don't touch me!" and "Be careful!" as officers tried to subdue him and pry his crying child from his arms.

20. This action was taken despite English's protective efforts over his child, who was subsequently and forcibly removed from Mr. English's arms.

21. Rather than de-escalate the situation, Officer Vences performed a "secure the head" decentralization maneuver, forcing Mr. English to the ground, and proceeded to deliver multiple strong hand and forearm strikes, including strikes to Mr. English's head, in an effort to gain compliance and secure his hands.

22. The scene escalated with officers vocally commanding English to release the child, followed by further aggressive attempts to subdue him, notwithstanding that he had been brought to the ground and his ability to resist had diminished.

23. Moreover, Mr. English was not posing an imminent threat to the safety of the officers and other civilians within the restaurant, as he was holding his child and attempting to protect him.

24. Multiple officers subdued Mr. English on the ground while Officer Vences repeatedly struck him. At this juncture, the level of force used by officers exceeded what was reasonable under the circumstances, as any resistance by Mr. English no longer justified continued strikes.

25. As the altercation unfolded, Boyd, who had also been seated at the table, attempted to intervene but was met with a violent takedown by officers, resulting in her own arrest and physical injury.

26. Officer Roepke further escalated tensions through a heated exchange with the child's family members, including the grandmother, Tekesisha Boyd.

27. Officer Roepke referenced the potential involvement of Child Protective Services, which contributed to the escalating tension during the encounter.

28. Amid this chaos, English was arrested by the police for resisting arrest and disorderly conduct, with an added threat of custody loss of their child pending conviction.

29. This unfolded even though both the family and the restaurant's employees stated they had been inside the restaurant the entire time, indicating the officers had apprehended the wrong individuals for the hit-and-run incident.

30. Ultimately, it was later revealed that the actual suspects sought in connection with the hit-and-run incident were hiding in the restaurant's bathroom.

31. Upon information and belief, an Internal Affairs / Use of Force investigation conducted by Sergeant Austin Hancock of the KPD determined that Officer Vences delivered

multiple strong hand and forearm strikes, and that several of those strikes were unreasonable and no longer a justified response to the situation. The investigation further determined that the hair grab utilized was an untrained technique.

32. The investigation further concluded that at least six additional strikes were unjustified and that the excessive portion of the force lasted approximately six seconds in real time.

33. The KPD's investigation further determined that several of Officer Vences's strikes were unreasonable and violated department policy. The investigator concluded that Officer Vences's use of force became unjustified during the encounter and that the continued strikes were not necessary under the circumstances.

34. Specifically, the internal investigator determined that the use-of-force decisions, including the strong hand strikes, strong forearm strikes, and strong angle knee strike, were unreasonable and violated the department's Use-of-Force policy because they were "*no longer a reasonable response to the situation,*" and further identified the hair grab as an untrained technique.

35. The investigation concluded that Officer Vences violated KPD Policy 1.3 (Use of Force), KPD Policy 41.14 (Mobile Video/Audio and Body-Worn Camera Equipment) by failing to document that his camera had been inadvertently turned off during the incident, and KPD Policy 1.1 (Mission, Vision, and Core Values) since Officer Vences "*made decisions and took actions during this incident that do not reflect the Mission, Vision, or Values of the Kenosha Police Department.*"

36. Similarly, Officer Courtier's actions were scrutinized, leading to the conclusion that his lack of appropriate aftercare and failure to meet departmental communication and reporting standards warranted a 10-day suspension.

37. As a direct result of the unconstitutional and excessive use of force by the Defendants, Mr. English suffered both physical and emotional injuries.

38. Following the incident, Mr. English began showing signs of trauma and was later diagnosed with post-traumatic stress disorder, which includes constant fear, severe anxiety, depression, and withdrawal from others.

39. Mr. English also developed ongoing neck and back pain, numbness in his arms and legs, and frequent muscle spasms.

40. Mr. English further reported that during the incident, an officer, believed to be Officer Vences, repeatedly struck him in the head and caused his head to make forceful contact with a surface. Following the incident, he developed visible and painful lumps on his head, which persisted thereafter.

41. These injuries have made it difficult for him to work and have affected his ability to care for his child.

## COUNT I

## 42 U.S.C. § 1983- UNLAWFUL USE OF FORCE AGAINST DEFENDANTS OFFICER MICHAEL VENCES, OFFICER LUKE COURTIER, AND OFFICER KEVIN ROEPKE

42. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

43. The KPD Policy and Procedure ("Procedure") in effect and at all times relevant to this claim provides, "It is the policy of the Kenosha Police Department that sworn personnel use only the amount of physical force reasonable and necessary to arrest, apprehend, or restrain a person. Force may also be used in defense of self or others. The level and amount of force which an officer uses must be reasonably necessary to accomplish the law enforcement objective." (Policy and Procedure, 1.3 Use of Force)

44. The procedure further states that "While the use of reasonable physical force may be necessary in situations which cannot be otherwise controlled, force may not be resorted to unless other reasonable alternatives have been exhausted or would clearly be ineffective under the particular circumstances. Officers are permitted to use whatever force is reasonable and necessary to protect themselves or others from bodily harm. The use of excessive and unwarranted force or brutality will not be tolerated under any circumstances and subject the officer to disciplinary action, criminal and civil liability. "

45. This count is brought against Defendants Officer Michael Vences, Officer Luke Courtier, and Officer Kevin Roepke in their individual and official capacities.

46. On information and belief, each Defendant either directly used excessive physical force against Mr. English or jointly participated in the use of such force during the incident.

47. The actions of Defendants as described above, constitute a use of force that was neither reasonable nor necessary under the circumstances. The force used was not in defense of self or others, nor was it reasonably necessary to accomplish a law enforcement objective, in direct contravention of the KPD's Policies and Procedures regarding the use of force.

48. Specifically, Defendants used unreasonable and excessive force by seizing Mr. English while he was holding his one-year-old child, applying physical control techniques including an escort hold and a "secure the head" decentralization maneuver to force him to the ground, forcibly removing his child from his arms, and delivering multiple strong hand and forearm strikes, including repeated strikes to his head, even after his hands were visible and he was being brought under control.

49. The force further included the use of untrained or unauthorized techniques, including a hair grab, as well as continued physical strikes and force after Mr. English was effectively subdued and no longer posed a threat.

50. The use of force by Defendants was excessive, unwarranted, and in violation of the aforementioned policies.

51. The continued use of force after Mr. English was effectively subdued and no longer posed a threat, including additional strikes determined by the department's own internal investigation to be unjustified, further demonstrating that the force used was objectively unreasonable under the circumstances.

52. This action clearly did not exhaust other reasonable alternatives and thus was not the minimal amount of force necessary for the situation.

53. The failure of Defendants to adhere to the KPD's Use of Force Policy, which explicitly prohibits the use of excessive and unwarranted force, demonstrates a clear breach of their duty to act within the bounds of the law and departmental regulations.

54. As a result of the Defendant's actions, Mr. English suffered physical harm, emotional distress, and other compensable injuries.

55. The actions of Defendants directly infringed upon the plaintiff's Fourth Amendment rights, which protect citizens from the use of excessive force by law enforcement officers.

### **COUNT II**

**42 U.S.C. § 1983 – VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AGAINST DEFENDANTS OFFICER MICHAEL VENCES, OFFICER LUKE COURTIER, AND OFFICER KEVIN ROEPKE**

56. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

9

57. The Fourteenth Amendment to the United States Constitution protects individuals from government conduct that shocks the conscience and deprives them of liberty without due process of law. Law enforcement officers violate this right when they engage in conduct that is arbitrary, egregious, or fundamentally unfair.

58. Defendants, acting under color of state law, violently and unjustifiably assaulted Plaintiff while he was holding his one-year-old child. Despite the absence of any immediate threat posed by Plaintiff, and despite Plaintiff's verbal pleas for caution, Defendants took him to the ground, forcibly pried the child from his arms, and struck him multiple times in the presence of his family. This included the use of physical control techniques such as an escort hold and a "secure the head" decentralization maneuver, as well as multiple strong hand and forearm strikes, including repeated strikes to Plaintiff's head.

59. Defendants' conduct endangered both Plaintiff and his infant son, and reflected a reckless disregard for their safety, bodily integrity, and emotional well-being.

60. Defendants further applied force after Plaintiff was effectively subdued, including additional strikes delivered after his hands were visible and he was being brought under control, as well as the use of untrained or unauthorized techniques, including a hair grab, demonstrating a continued and escalating use of unreasonable force.

61. The force and aggression used under these circumstances were excessive and wholly unrelated to any legitimate law enforcement purpose. The actions of Defendants were so brutal, degrading, and disproportionate that they shock the conscience and violate the substantive due process protections of the Fourteenth Amendment.

62. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional trauma, humiliation, and ongoing psychological distress. The conduct

10

described herein deprived Plaintiff of his substantive due process rights and entitles him to compensatory and punitive damages under 42 U.S.C. § 1983.

**COUNT III**

**42 U.S.C. § 1983- FAILURE TO ACT- DUTY TO INTERVENE AGAINST DEFENDANTS OFFICER LUKE COURTIER AND OFFICER KEVIN ROEPKE**

63. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

64. The aforementioned procedure in effect and at all times relevant to this claim also provides that "The failure of an officer to prevent the use of excessive force by another officer or failure to report the use of excessive force by another officer may subject the officer to disciplinary action, criminal and civil liability."

65. Defendants Officer Courtier and Roepke, at all relevant times, were present and directly involved in the incident where excessive force was utilized against English. Each Defendant observed, or had reason to know, that Officer Vences was using unreasonable and excessive force, including multiple strikes to Mr. English, and that such force continued over a period of time sufficient to allow intervention, including additional strikes delivered after any resistance had diminished and Mr. English was being brought under control. Despite this, Officer Courtier and Roepke failed to take reasonable steps to intervene in the use of excessive force against the Plaintiff.

66. Defendants had a realistic and reasonable opportunity to intervene and prevent or mitigate the use of excessive force, including the repeated strikes delivered to Mr. English, but failed to do so.

11

67. By failing to intervene, Defendants facilitated and implicitly condoned the use of excessive force, thereby directly contributing to the violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

68. Defendants' failure to act exacerbated the harm inflicted on Mr. English and intensified the distress and trauma suffered by both him and his family. Their inaction in the face of ongoing and observable excessive force demonstrates deliberate indifference to Plaintiff's constitutional rights.

69. Such conduct reflects a broader failure within the KPD to adequately train and enforce its own policies concerning the duty of officers to intervene in instances of excessive force.

70. As a direct and proximate result of the inaction of Defendants, Plaintiff suffered physical injuries, emotional distress, and other compensable damages.

## COUNT IV

## 42 U.S.C. § 1983 - FALSE IMPRISONMENT AGAINST DEFENDANTS OFFICER MICHAEL VENCES, OFFICER LUKE COURTIER, AND OFFICER KEVIN ROEPKE

71. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

72. The Fourth Amendment of the United States Constitution guarantees the right against unreasonable searches and seizures, which includes the right to be free from arrest without probable cause.

73. An arrest without probable cause constitutes false imprisonment under the color of law in violation of 42 U.S.C. § 1983.

74. Plaintiff asserts that Defendants Officer Vences, Officer Courtier, and Officer Roepke, by arresting Plaintiff without probable cause, subjected Plaintiff to false imprisonment.

12

75. At the time of the seizure and arrest, Plaintiff was lawfully present inside the restaurant with his family and was not engaged in any criminal activity.

76. Defendants relied on vague, generalized, and uncorroborated descriptions that did not match Plaintiff and failed to conduct a reasonable investigation before detaining and arresting him.

77. Defendants lacked individualized suspicion tying Plaintiff to the reported hit-and-run incident and instead relied on broad and non-specific characteristics that were insufficient to justify a seizure or arrest.

78. Plaintiff was detained and arrested without justification, as there was no reasonable suspicion or probable cause to believe that Plaintiff had committed or was committing any crime at the time of the arrest.

79. The actions of Defendants in detaining and arresting Plaintiff without probable cause were under color of state law and resulted in a violation of Plaintiff's Fourth Amendment rights.

80. The lack of probable cause for Plaintiff's arrest rendered the detention and arrest unlawful, constituting false imprisonment.

81. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including but not limited to, loss of liberty, emotional distress, and humiliation.

**<u>PUNITIVE DAMAGES</u>**

82. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

83. Plaintiff seeks punitive damages against Defendants under the provisions of 42 U.S.C. § 1983, for their willful, malicious, and reckless disregard of Plaintiff's constitutional rights.

84. Plaintiff is therefore entitled to punitive damages against all named defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

a. Judgment in favor of the Plaintiff and against all Defendants on all counts of the Complaint;

b. An award of compensatory damages against all Defendants, jointly and severally, including general and special damages, in an amount to be determined at trial;

c. An award of punitive damages against the individual Defendants for their willful, malicious, and reckless disregard for Plaintiff's constitutional rights;

d. An award of attorney fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988 and any other applicable law;

e. An award of prejudgment interest, costs, and post-judgment interest in favor of the Plaintiff and against the Defendants as allowed by law;

f. Such other and further relief as this Court deems just and proper under the circumstances.

## PLAINTIFF HEREBY DEMAND A JURY TRIAL

Dated this 15th day of July 2026.

**The LaMarr Firm, PLLC**

By: /s/ B'Ivory LaMarr
B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd Suite 1000
Houston, TX 77057
Phone: (800) 679-4600 ext. 700
Email:blamarr@bivorylamarr.com
*Attorney for Plaintiff*

14