**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

JERMELLE ENGLISH JR.,

*Plaintiff,*

v. Case No.: 2:26-cv-01239-NJ

OFFICER MICHAEL VENCES,
OFFICER LUKE COURTIER,
OFFICER KEVIN ROEPKE,
OFFICER JAMES KARAWAY,
SGT. MICHAEL LODYGOWSKI,
THE CITY OF KENOSHA,
POLICE CHIEF PATRICK PATTON,
VILLAGE OF PLEASANT PRAIRIE,
POLICE CHIEF DAVID SMETANA,
WISCONSIN APPLE LLC,
SBG APPLE NORTH XII, LLC,
SBG APPLE NORTH I, LLC,
APPLEBEE'S FRANCHISOR LLC,
APPLEBEE'S RESTAURANTS LLC, and
DINE BRANDS GLOBAL, INC.,

*Defendants.*

---

**FIRST AMENDED COMPLAINT**

---

NOW COMES Plaintiff Jermelle English Jr., by and through undersigned counsel, and brings this First Amended Complaint against Defendants Officer Michael Vences, Officer Luke Courtier, Officer Kevin Roepke, and Officer James Karaway (each in their individual and official capacities as officers of the Kenosha Police Department); Sergeant Michael Lodygowski (in his individual and official capacity as an officer of the Pleasant Prairie Police Department); the City of Kenosha and Police Chief Patrick Patton (the latter sued in his official capacity only); the

Village of Pleasant Prairie and Police Chief David Smetana (the latter sued in his official capacity only); and Wisconsin Apple LLC, SBG Apple North XII, LLC, SBG Apple North I, LLC, Applebee's Franchisor LLC, Applebee's Restaurants LLC, and Dine Brands Global, Inc. (collectively, the "Applebee's Defendants"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, and pursuant to 42 U.S.C. § 1981 to redress race discrimination and interference with Plaintiff's right to make and enforce contracts.
2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) and (a)(4), which provide jurisdiction for civil rights actions brought under 42 U.S.C. §§ 1981 and 1983.
3. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as Plaintiff's federal claims.
4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred within this judicial district.

**PARTIES**

5. Jermelle English Jr. (hereinafter referred to as "English") is a natural person who is a citizen and resident of 2409 81st Street Kenosha, WI 53143.

6. Officer Michael Vences (hereinafter referred to as “Officer Vences”) at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.
7. Officer Luke Courtier (hereinafter referred to as “Officer Courtier”) at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.
8. Officer Kevin Roepke (hereinafter referred to as “Officer Roepke”) at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.
9. Officer James Karaway (hereinafter referred to as "Officer Karaway"), at all times relevant to this claim, was operating under color of state law, as a police officer for the City of Kenosha Police Department.
10. Sergeant Michael Lodygowski (hereinafter referred to as "Sgt. Lodygowski"), at all times relevant to this claim, was operating under color of state law, as a police officer for the Village of Pleasant Prairie Police Department.
11. The City of Kenosha (hereinafter referred to as “City of Kenosha”) is an incorporated municipality and public entity responsible for the safety and welfare of its residents and/or visitors.
12. The City of Kenosha is incorporated under Wisconsin Statutes Chapter 62, with an office located at 625 52nd St, Kenosha, Wisconsin, 53140.
13. Defendant Patrick Patton is the Chief of Police for the Kenosha Police Department. He is sued in his official capacity only.

14. Defendant Village of Pleasant Prairie (hereinafter referred to as "Pleasant Prairie") is an incorporated municipality and public entity located in Kenosha County, Wisconsin, responsible for the safety and welfare of its residents and/or visitors.

15. Defendant David Smetana is the Chief of Police for the Pleasant Prairie Police Department. He is sued in his official capacity only.

16. The City of Kenosha has a legal obligation under Wis. Stat. § 895.46 to satisfy any judgment entered against Officer Vences, Officer Courtier, Officer Karaway, and/or Officer Roepke if it is determined that any of them were acting under the color of state law and within the scope of their employment at the time of the incident.

17. The Village of Pleasant Prairie has a legal obligation under Wis. Stat. § 895.46 to satisfy any judgment entered against Sgt. Lodygowski if it is determined that he was acting under the color of state law and within the scope of his employment at the time of the incident.

18. The Applebee's restaurant at 6950 75th Street, Kenosha, Wisconsin was operated pursuant to a franchise agreement between Defendant Applebee's Franchisor LLC, as franchisor, and Defendant Wisconsin Apple LLC and/or SBG Apple North XII, LLC, as franchisee. In the alternative, and on information and belief, SBG Apple North XII, LLC entered into a Restaurant Operating and Consulting Agreement delegating or conferring its rights and responsibilities under the franchise to SBG Apple North I, LLC, which undertook day-to-day operation of the restaurant and employment of its staff.

19. The franchise agreement specifically required that the restaurant's managerial staff be trained on protocols for interacting with law enforcement and for handling suspected criminal activity by patrons, distinct from the agreement's separate and more general

provisions governing food preparation, signage, and marketing. Defendant Applebee's Franchisor LLC retained the right to prescribe, and did prescribe, the content of that specific training.

20. On information and belief, Defendants Applebee's Restaurants LLC and/or Dine Brands Global, Inc. drafted or approved the specific protocols Applebee's Franchisor LLC required for staff interactions with law enforcement and handling of suspected criminal activity, as distinct from general brand and quality standards, and thereby retained a right of control over the specific practice alleged to have caused Plaintiff's injuries.

21. Plaintiff sues each of the individual law enforcement defendants in both their individual and official capacities. The corporate Applebee's defendants identified above are sued in their corporate capacities.

**CONSTITUTIONALLY PROTECTED INTERESTS**

22. As a citizen of the United States, Plaintiff Jermelle English Jr. is entitled to be free from the use of excessive force by law enforcement officers and from seizure, detention, or arrest without probable cause, as guaranteed by the Fourth Amendment to the United States Constitution. He is further protected under the Fourteenth Amendment from actions by state actors that are malicious, conducted with reckless disregard, or show deliberate indifference to his constitutional rights, including his liberty interest in the care, custody, and management of his child.

23. The actions of Defendant Officers Vences, Courtier, Karaway, Roepke, and Sgt. Lodygowski, as set forth below, were taken under color of state law and in violation of these clearly established constitutional protections. Their conduct was malicious, objectively unreasonable, and undertaken with reckless disregard or deliberate

indifference to Plaintiff's rights, thereby violating the Fourth and Fourteenth Amendments to the United States Constitution.

24. The constitutional violations described herein were caused, in whole or in part, by policies, practices, and customs of Defendants City of Kenosha and Village of Pleasant Prairie, and by the failure of Defendants Police Chief Patrick Patton and Police Chief David Smetana to adequately train, supervise, and discipline officers under their command regarding the use of reasonable force, the making of probable cause determinations, and the constitutional rights of civilians, as more fully alleged below.

## STATEMENT OF RELEVANT FACTS

25. On July 20, 2023, around 11 p.m., English, Shanya Boyd, and their one-year-old child were dining out at the Applebee's restaurant in Kenosha to enjoy a pleasant evening.

26. Concurrently, the Kenosha Police Department ("KPD") responded to a vehicle collision at the intersection of Highway 31 (Green Bay Road) and Highway 50, where a rollover crash between two vehicles had occurred. Several individuals from the red sedan fled the crash scene on foot, heading westbound toward nearby businesses, including Applebee's.

27. Subsequently, KPD officers responded to Applebee's based on witness statements and suspicions that the fleeing occupants may have entered the restaurant. Officers began checking patrons and the men's restroom for potential suspects.

28. Before officers returned to the booth where English, Boyd, and their child were seated, restaurant staff called police to report that a group matching the description was present, and, upon officers' arrival, an Applebee's employee directed them to the specific booth where the family was seated.

29. When Officer Courtier separately asked restaurant staff how long English's group had been seated, a manager on duty told him the group had arrived approximately twenty minutes earlier. Restaurant staff who had actually interacted with the table, along with a time-stamped record of the group's drink order, placed their arrival closer to an hour before that point.

30. At the time these events occurred, English and Boyd were the only Black patrons seated in the dining area of the restaurant.

31. In a distressing turn of events, English, while holding his one-year-old child, was seized and subjected to a physical escort hold by Officer Vences, which quickly escalated into a physical struggle. He screamed "Don't touch me!" and "Be careful!" as officers tried to subdue him.

32. While English was still seated and holding the child, Officer Vences, attempting to control English's continued resistance, grabbed his hair.

33. As Officer Vences attempted to stop English, Sergeant Lodygowski of the Pleasant Prairie Police Department, who was assisting Kenosha officers at the scene, moved to block English's path and, together with Officer Vences, took hold of English to prevent him from continuing to walk away while he held the child.

34. Despite English's protective efforts to keep hold of his child throughout the struggle, officers were ultimately able to loosen his grip, at which point an Applebee's employee took the child and carried him away from the immediate area, as confirmed by body-worn camera footage, an Applebee's employee's cell-phone recording, the restaurant's surveillance system, and Sgt. Lodygowski's own written report.

35. Once the child had been removed from English, Officer Vences performed a "secure the head" decentralization maneuver, forcing English to the ground, and proceeded to deliver multiple strong hand and forearm strikes, including strikes to English's head, in an effort to gain compliance and secure his hands.

36. English's ability to resist officers had significantly diminished once he was on the ground and being restrained by multiple officers, such that the continued strikes delivered at that point were no longer a proportionate response to any remaining resistance.

37. English was not posing an imminent threat to the safety of the officers or other civilians within the restaurant at any point during this encounter. At all relevant times, he never brandished a weapon, made any threatening gesture toward any officer or bystander, or gave officers any objective indication that he was armed or dangerous. His only conduct throughout the encounter was holding, and attempting to protect, his one-year-old child.

38. Multiple officers subdued English on the ground while Officer Vences repeatedly struck him. At this juncture, the level of force used by officers exceeded what was reasonable under the circumstances, as any resistance by English no longer justified continued strikes.

39. After English had been handcuffed and was lying on the ground, Officer Karaway arrived at the scene to assist. Once English was placed on a medical gurney for transport, Officer Karaway secured his handcuffed hands to the gurney used to transport him.

40. As the altercation unfolded, Boyd, who had also been seated at the table, attempted to intervene but was met with a violent takedown by officers, resulting in her own arrest and physical injury.

41. Following the arrests of English and Boyd, Officer Roepke contacted Wisconsin's child protective services access line regarding placement of the child, and engaged in a heated, confrontational exchange with the child's grandmother, Tekesisha Boyd, in which he referenced the potential involvement of Child Protective Services and the possibility that the child could be placed outside the family which contributed to the escalating tension during the encounter.

42. A caseworker ultimately determined that the child could not be released to the family member English and Boyd first identified, due to that relative's out-of-state residence, and the child was instead released to a different relative after being examined at a nearby hospital as a precaution.

43. Amid this chaos, English was arrested by the police for resisting arrest and disorderly conduct, with an added threat of custody loss of their child pending conviction.

44. This unfolded even though both the family and the restaurant's employees stated they had been inside the restaurant the entire time, indicating the officers had apprehended the wrong individuals for the hit-and-run incident.

45. The individuals actually involved in the hit-and-run collision entered the restaurant through a different entrance than the one English's family had used, went directly to a restroom without passing through the dining area, had no contact with English, Boyd, or their table at any point before officers located them, and were the same suspects ultimately found hiding in the restaurant's bathroom.

46. Upon information and belief, an Internal Affairs/Use of Force investigation conducted by Sergeant Austin Hancock of the KPD examined each application of force by Officer Vences during the encounter. The investigation found that Officer Vences's initial hold of

English's hair, applied while English was seated and holding his child, was not a trained control technique, but concluded that this particular application of force was reasonable given the totality of the circumstances then confronting the officer. The investigation reached the opposite conclusion as to the force Officer Vences used once the child had been removed from the area. It determined that Officer Vences delivered a series of strong hand strikes, strong forearm strikes, and a strong angle knee strike, and that several of these strikes were unreasonable and no longer a justified response to the situation.

47. The investigation further concluded that at least six additional strikes were unjustified and that the excessive portion of the force lasted approximately six seconds in real time.

48. The KPD's investigation further determined that several of Officer Vences's strikes were unreasonable and violated department policy. The investigator concluded that Officer Vences's use of force became unjustified during the encounter and that the continued strikes were not necessary under the circumstances.

49. Specifically, the internal investigator determined that the use-of-force decisions, including the strong hand strikes, strong forearm strikes, and strong angle knee strike, were unreasonable and violated the department's Use-of-Force policy because they were "*no longer a reasonable response to the situation,*" and further identified the hair grab as an untrained technique.

50. The investigation concluded that Officer Vences violated KPD Policy 1.3 (Use of Force), KPD Policy 41.14 (Mobile Video/Audio and Body-Worn Camera Equipment) by failing to document that his camera had been inadvertently turned off during the incident, and KPD Policy 1.1 (Mission, Vision, and Core Values) since Officer Vences "*made decisions*

*and took actions during this incident that do not reflect the Mission, Vision, or Values of the Kenosha Police Department.*"

51. Similarly, Officer Courtier's actions were scrutinized, leading to the conclusion that his lack of appropriate aftercare and failure to meet departmental communication and reporting standards warranted a 10-day suspension.

52. The criminal charges filed against English arising from this incident, resisting an officer and disorderly conduct, were dismissed on the prosecutor's motion on December 20, 2023, resulting in a final judgment of dismissal in English's favor.

53. As a direct result of the unconstitutional and excessive use of force by the Defendants, English suffered both physical and emotional injuries.

54. Following the incident, English began showing signs of trauma and was later diagnosed with post-traumatic stress disorder, which includes constant fear, severe anxiety, depression, and withdrawal from others.

55. English also developed ongoing neck and back pain, numbness in his arms and legs, and frequent muscle spasms.

56. English further reported that during the incident, an officer, believed to be Officer Vences, repeatedly struck him in the head and caused his head to make forceful contact with a surface. Following the incident, he developed visible and painful lumps on his head, which persisted thereafter.

57. These injuries have made it difficult for him to work and have affected his ability to care for his child.

58. On information and belief, the Kenosha Police Department has had prior, separately litigated incidents involving allegations of excessive force and inadequate investigation

before use of force, including the 2018 use of a taser against a non-resisting individual, the 2020 shooting of a civilian during a police encounter, and a 2022 incident involving a knee restraint against a minor, incidents which, taken together, reflect on the Department's training and supervision practices regarding use of force.

59. The Applebee's restaurant at 6950 75th Street operated under a franchise relationship in which the franchisor set requirements for how the location's managerial staff were to be trained, including guidance on interacting with law enforcement and handling customer complaints or disturbances. On information and belief, entities higher in the corporate structure, including Applebee's Restaurants LLC and Dine Brands Global, Inc., participated in drafting or approving those training materials.

60. English and his family had ordered food and a beverage and were seated at the restaurant for approximately an hour before restaurant staff contacted police a second time. On information and belief, English's family did not receive the food they had ordered.

61. The report identifying English and Boyd as the individuals involved in the hit-and-run collision was communicated by restaurant staff to responding officers within the restaurant's dining area, in a location where the statement could be, and was, overheard by other patrons present at the time.

**COUNT I**

**42 U.S.C. § 1983 – UNLAWFUL USE OF FORCE AGAINST DEFENDANTS OFFICER MICHAEL VENCES, OFFICER JAMES KARAWAY, AND SGT. MICHAEL LODYGOWSKI**

62. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

63. The KPD Policy and Procedure ("Procedure") in effect and at all times relevant to this claim provides, "It is the policy of the Kenosha Police Department that sworn personnel use only the amount of physical force reasonable and necessary to arrest, apprehend, or

restrain a person. Force may also be used in defense of self or others. The level and amount of force which an officer uses must be reasonably necessary to accomplish the law enforcement objective." (Policy and Procedure, 1.3 Use of Force)

64. The procedure further states that "While the use of reasonable physical force may be necessary in situations which cannot be otherwise controlled, force may not be resorted to unless other reasonable alternatives have been exhausted or would clearly be ineffective under the particular circumstances. Officers are permitted to use whatever force is reasonable and necessary to protect themselves or others from bodily harm. The use of excessive and unwarranted force or brutality will not be tolerated under any circumstances and subject the officer to disciplinary action, criminal and civil liability. "

65. This count is brought against Defendants Officer Vences and Officer Karaway in their individual and official capacities as officers of the Kenosha Police Department, and against Defendant Sgt. Lodygowski in his individual and official capacity as an officer of the Pleasant Prairie Police Department.

66. Officer Vences delivered the physical strikes described below. Sgt. Lodygowski restrained English's arm and upper body throughout the struggle and helped bring him to the ground and into handcuffs while Officer Vences struck him. Officer Karaway's use of force was limited to securing English's handcuffs to a gurney, after English was already handcuffed and subdued.

67. At all times relevant to this claim, Sgt. Lodygowski was acting in his official capacity, responding to assist Kenosha police in a mutual aid capacity, and was acting under color of state law throughout.

68. Independent of any department-specific policy, the use of force by a law enforcement officer against a civilian is governed by the "objective reasonableness" standard which considers the severity of the alleged offense, whether the subject poses an immediate threat, and whether the subject is actively resisting or attempting to evade arrest.

69. This standard applies to the conduct of all individual Defendants named in this Count, regardless of which department employed them. On information and belief, the Village of Pleasant Prairie Police Department also maintains its own use-of-force policy applicable to Sgt. Lodygowski's conduct, the specific terms of which are not yet known to Plaintiff and will be sought in discovery.

70. The actions of Defendants as described above, constitute a use of force that was neither reasonable nor necessary under the circumstances.

71. The force used was not in defense of self or others, nor was it reasonably necessary to accomplish a law enforcement objective, in direct contravention of the KPD's Policies and Procedures regarding the use of force.

72. The force further included continued physical strikes after English was effectively subdued and no longer posed a threat, specifically the six use-of-force decisions, strong hand strikes, strong forearm strikes, and a strong angle knee strike, that the Department's own internal investigation found were "no longer a reasonable response to the situation."

73. The use of force by Defendants was excessive, unwarranted, and in violation of the aforementioned policies.

74. The continued use of force after English was effectively subdued and no longer posed a threat, including additional strikes determined by the department’s own internal

investigation to be unjustified, further demonstrating that the force used was objectively unreasonable under the circumstances.

75. This action clearly did not exhaust other reasonable alternatives and thus was not the minimal amount of force necessary for the situation.

76. The failure of Defendants to adhere to the KPD's Use of Force Policy, which explicitly prohibits the use of excessive and unwarranted force, demonstrates a clear breach of their duty to act within the bounds of the law and departmental regulations.

77. As a result of the Defendant's actions, English suffered physical harm, emotional distress, and other compensable injuries.

78. The actions of Defendants directly infringed upon the plaintiff's Fourth Amendment rights, which protect citizens from the use of excessive force by law enforcement officers.

## COUNT II

## 42 U.S.C. § 1983 – VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AGAINST DEFENDANTS OFFICER MICHAEL VENCES, SGT. MICHAEL LODYGOWSKI, AND OFFICER KEVIN ROEPKE

79. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

80. The Fourteenth Amendment to the United States Constitution protects individuals from government conduct that shocks the conscience and deprives them of liberty without due process of law. Law enforcement officers violate this right when they engage in conduct that is arbitrary, egregious, or fundamentally unfair.

81. To the extent any of Officer Vences' or Sgt. Lodygowski's conduct is not fully addressed by the excessive force claim in Count I, Plaintiff alleges in the alternative that the same conduct independently violated his right to substantive due process.

82. Officer Vences and Sgt. Lodygowski, acting under color of state law, physically restrained Plaintiff while he was holding his one-year-old child.

83. Despite no immediate threat and English's pleas for caution, they brought him to the ground using an escort hold and a "secure the head" maneuver. Officer Vences also grabbed English's hair while he was still holding the child.

84. Once an Applebee's employee had carried the child to safety, Officer Vences struck English multiple times in the head, including strikes delivered after his hands were visible and he was being brought under control.

85. This force created a serious risk of harm to the child while he was still in English's arms, which English directly witnessed.

86. The force used was excessive, unrelated to any legitimate law enforcement purpose, and so disproportionate that it shocks the conscience.

87. As a direct and proximate result of Officer Vences' and Sgt. Lodygowski's conduct, Plaintiff suffered physical pain, emotional trauma, humiliation, and ongoing psychological distress.

88. Independent of the excessive force alleged above, the Fourteenth Amendment protects a parent's fundamental liberty interest in the care, custody, and management of his or her child, and government conduct that unjustifiably interferes with the integrity of the family unit may itself violate substantive due process.

89. While English was physically restrained and unable to protect or participate in decisions about his child, Officer Roepke separately engaged the child's grandmother, Tekesisha Boyd, in a confrontational exchange about the possibility of Child Protective Services involvement and the child being placed outside the family.

90. This conduct was not necessary to secure the scene or protect officer safety. It unjustifiably interfered with English's protected relationship with his child, at a moment

when English himself was restrained and unable to respond, and was undertaken with deliberate indifference to that protected interest.

91. As a direct result, English suffered a violation of his substantive due process rights, along with emotional distress and mental anguish.

**COUNT III**

**42 U.S.C. § 1983 – FAILURE TO ACT – DUTY TO INTERVENE AGAINST DEFENDANT SGT. MICHAEL LODYGOWSKI**

92. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

93. Independent of any department-specific policy, a law enforcement officer who is present and observes a fellow officer using excessive force against a person has an affirmative constitutional duty to intervene where the officer has a realistic opportunity to do so, regardless of which department employs the observing officer.

94. On information and belief, the Pleasant Prairie Police Department also maintains policy addressing an officer's obligation to prevent or report another officer's use of excessive force, the specific terms of which are not yet known to Plaintiff and will be sought in discovery.

95. Sgt. Lodygowski was physically present throughout Officer Vences' use of force against English, positioned at his side and in continuous physical contact with him for the duration of the strikes. He was therefore in a direct position to observe each strike, including those delivered after English's resistance had ceased and his hands were visibly under control.

96. Sgt. Lodygowski had a realistic opportunity to stop the continued strikes, including once they were no longer a reasonable response to any resistance English was offering. At one point, he moved Officer Vences' hand away from English's back and can be heard saying

words to the effect of "*alright, alright, stop*." Despite this recognition that the force had become excessive, he took no further action to physically stop Officer Vences, though he had the opportunity to do so.

97. By recognizing that the force had become excessive but failing to more fully intervene, Sgt. Lodygowski facilitated and implicitly condoned its continued use, contributing to the violation of English's Fourth Amendment rights and exacerbating the harm he suffered. This inaction in the face of ongoing, observable excessive force reflects deliberate indifference to English's constitutional rights.

98. Sgt. Lodygowski's conduct reflects, on information and belief, a broader failure within the Village of Pleasant Prairie Police Department to adequately train officers on the duty to intervene when assisting another department during mutual aid operations.

99. As a direct and proximate result of Sgt. Lodygowski's inaction, Plaintiff suffered physical injuries, emotional distress, and other compensable damages.

## COUNT IV

## 42 U.S.C. § 1983 – FALSE IMPRISONMENT AGAINST DEFENDANTS OFFICER MICHAEL VENCES, OFFICER LUKE COURTIER, OFFICER JAMES KARAWAY, AND SGT. MICHAEL LODYGOWSKI

100. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

101. The Fourth Amendment of the United States Constitution guarantees the right against unreasonable searches and seizures, which includes the right to be free from arrest without probable cause.

102. An arrest without probable cause constitutes false imprisonment under the color of law in violation of 42 U.S.C. § 1983.

103. Officer Vences and Sgt. Lodygowski seized and arrested English without probable cause. Officer Courtier personally advised English he was detained and not free to leave, before Officer Vences physically restrained him.

104. Officer Karaway physically secured English's restraints after he was already handcuffed and subdued, thereby participating in continuing his unlawful detention without independently assessing whether probable cause existed for that continued restraint.

105. At the time of the seizure and arrest, Plaintiff was lawfully present inside the restaurant with his family and was not engaged in any criminal activity.

106. Defendants relied on vague, generalized, and uncorroborated descriptions that did not match Plaintiff and failed to conduct a reasonable investigation before detaining and arresting him.

107. Defendants lacked individualized suspicion tying Plaintiff to the reported hit-and-run incident and instead relied on broad and non-specific characteristics that were insufficient to justify a seizure or arrest, including a restaurant employee's account of how long Plaintiff's family had been present that was inconsistent with the actual timeline and with other restaurant staff's own knowledge of when the family had arrived.

108. Plaintiff was detained and arrested without justification, as there was no reasonable suspicion or probable cause to believe that Plaintiff had committed or was committing any crime at the time of the arrest.

109. The actions of Officer Vences, Officer Courtier, Officer Karaway, and Sgt. Lodygowski in detaining and arresting English without probable cause were taken under color of state law and violated his Fourth Amendment rights.

110. As a direct and proximate result, English suffered loss of liberty, emotional distress, humiliation, and other damages.

## COUNT V

## 42 U.S.C. § 1983 – MALICIOUS PROSECUTION AND UNLAWFUL PRETRIAL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS OFFICER MICHAEL VENCES AND OFFICER LUKE COURTIER

111. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

112. Officer Vences and Officer Courtier supplied information to the Kenosha County District Attorney's Office regarding Plaintiff's alleged conduct on the night in question, which formed the basis for criminal charges brought against Plaintiff for resisting an officer and disorderly conduct.

113. The information Officer Vences and Officer Courtier provided did not reflect that a restaurant employee's account of how long Plaintiff's family had been present was inconsistent with other available information, as alleged above.

114. The charges brought against Plaintiff were dismissed on the Kenosha County District Attorney's own motion on December 20, 2023, resulting in a final judgment of dismissal, without a conviction on either charge.

115. Officer Vences and Officer Courtier lacked probable cause to believe Plaintiff had committed the offenses charged, and initiated or continued the criminal proceedings against Plaintiff despite this lack of probable cause.

116. English was seized within the meaning of the Fourth Amendment as a result of the criminal proceedings brought against him, which subjected him to the restraints inherent in facing pending criminal charges, including the obligation to appear in court to answer those charges.

117. This seizure continued without probable cause from the time charges were filed until their dismissal on December 20, 2023, in violation of English's rights under the Fourth Amendment, made applicable to the states through the Fourteenth Amendment.

118. As a direct and proximate result of Officer Vences' and Officer Courtier's conduct, Plaintiff suffered the fear, anxiety, and humiliation of facing pending criminal charges, reputational harm, financial cost in defending against those charges, and emotional distress.

## COUNT VI

## 42 U.S.C. § 1983 – MONELL CLAIM AND FAILURE TO TRAIN AGAINST DEFENDANTS CITY OF KENOSHA AND POLICE CHIEF PATRICK PATTON

119. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

120. A municipality and its officials may be held liable under 42 U.S.C. § 1983 where a plaintiff's constitutional injury was caused by an official policy, a widespread practice functioning as an unwritten custom, or a failure to train that amounts to deliberate indifference to the rights of persons with whom officers come into contact.

121. The Kenosha Police Department's own internal use-of-force investigation, described above, found that Officer Vences had previously received refresher training specific to the use of focused strikes, yet nonetheless delivered multiple strikes to Plaintiff's head after any resistance had ceased, in a manner the investigating officer determined was "no longer a reasonable response to the situation" and in violation of the Department's own Use of Force Policy.

122. An officer who had received the relevant training still engaging in the conduct that training was meant to prevent reflects, on information and belief, that the Department's

training in this area is inadequate to actually prevent the harm it is nominally designed to address, rather than merely an isolated lapse by a single officer.

123. The same internal investigation separately found that Officer Vences violated KPD Policy 41.14 (Mobile Video/Audio and Body-Worn Camera Equipment) by failing to document that his body-worn camera had been inadvertently turned off during the encounter, and resulted in a ten-day suspension of Officer Courtier for deficiencies in his aftercare and post-incident reporting following the same use-of-force event.

124. These additional findings, arising from the same single incident and involving two different officers, are consistent with and reinforce the conclusion that the Department's training and institutional safeguards surrounding use-of-force events are inadequate, rather than that this incident reflects two officers' unrelated, isolated failures.

125. On information and belief, these inadequacies are not limited to the events of this case.

126. Defendants City of Kenosha and Police Chief Patrick Patton have had reason to know, through prior lawsuits and public reporting concerning other incidents involving Kenosha police officers, that officers within the Department have engaged in the use of force disproportionate to the circumstances presented and have made arrest decisions without adequate investigation into probable cause, as further described above.

127. Defendants City of Kenosha and Police Chief Patrick Patton have failed to take adequate corrective measures in response to this pattern, such that the Department's approach to training and supervising officers on the use of force, on documentation of use-of-force incidents, and on probable cause determinations amounts to deliberate indifference to the constitutional rights of individuals such as Plaintiff.

128. Defendants City of Kenosha and Police Chief Patrick Patton's pattern and practice of failing to adequately investigate probable cause before effecting an arrest, and of tolerating the use of force disproportionate to the circumstances presented, is further reflected in other federal litigation and publicly available records, including but not limited to:

a. The July 9, 2018 tasing of Joseph Ferguson by then-Officer Ryan McDonough, deployed while Mr. Ferguson stood with his hands raised and was not physically resisting; the Seventh Circuit affirmed the denial of qualified immunity, holding that a reasonable jury could find the tasing unjustified. (F*erguson v. McDonough*, 13 F.4th 574 (7th Cir. 2021).)

b. The August 23, 2020 shooting of Jacob Blake by then-Officer Rusten Sheskey, who shot Mr. Blake seven times in the back during an attempted arrest, resulting in permanent paralysis and federal civil-rights litigation. (*Jacob S. Blake, Jr. v. Officer Rusten T. Sheskey*, Case No. 21-CV-381 (E.D. Wis.).)

c. The Department's response to the protests following the shooting of Mr. Blake on August 25, 2020, including its toleration of armed, unauthorized individuals patrolling the streets in defiance of an emergency curfew, one of whom shot three protesters, killing two; federal civil-rights litigation against the City arising from the Department's conduct that night remains pending as of 2026.

d. The Department's suspension of Officers Vences and Courtier, publicly announced on November 17, 2023 following its own internal review, jointly conducted with the West Allis Police Department, of the incident giving rise to

this action, in which the Department identified violations of its own Use of Force policy by both officers.

129. The policy, practice, custom, and/or failure to train Defendants City of Kenosha and Police Chief Patrick Patton was a moving force behind and proximate cause of the violation of Plaintiff's constitutional rights.

130. This deliberate indifference was a moving force behind the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

131. As a direct and proximate result of Defendants' policies, practices, customs, and failure to train, Plaintiff was subjected to excessive force and unlawful seizure, and suffered the damages described herein.

## COUNT VII

## INDEMNIFICATION PURSUANT TO WIS. STAT. § 895.46 AGAINST DEFENDANTS CITY OF KENOSHA AND POLICE CHIEF PATRICK PATTON

132. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

133. Wisconsin Statute § 895.46 requires a political subdivision to satisfy any judgment entered against its officer or employee where that individual is found to have acted within the scope of their employment, even where the conduct at issue was later determined to exceed the bounds of lawful authority.

134. Officer Vences, Officer Courtier, Officer Karaway, and Officer Roepke were, at all relevant times, on-duty employees of the Kenosha Police Department, acting within the course and scope of that employment during the events giving rise to Counts I, II, IV, V, and VI above.

135. Should any of these individual officers be found liable to Plaintiff on any count of this Complaint, Defendant City of Kenosha is obligated under Wis. Stat. § 895.46 to satisfy

that judgment on the officer's behalf, and Defendant Police Chief Patrick Patton, in his official capacity, shares in that same statutory obligation as the officers' commanding official.

**COUNT VIII**

**42 U.S.C. § 1983 – MONELL CLAIM AND FAILURE TO TRAIN AGAINST DEFENDANTS VILLAGE OF PLEASANT PRAIRIE AND POLICE CHIEF DAVID SMETANA**

136. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

137. As with a municipality, a Wisconsin village and its chief of police may be held liable under 42 U.S.C. § 1983 where a plaintiff's constitutional injury was caused by an official policy, a widespread practice functioning as an unwritten custom, or a failure to train that amounts to deliberate indifference to the rights of persons with whom its officers come into contact.

138. Sgt. Lodygowski, a Pleasant Prairie officer dispatched to assist the Kenosha Police Department, physically restrained Plaintiff throughout the encounter and remaining in continuous contact with Plaintiff while Officer Vences delivered strikes that the Kenosha Police Department's own internal investigation later found were, in substantial part, unreasonable and contrary to policy.

139. On information and belief, the Village of Pleasant Prairie has not adequately trained its officers on the constitutional limits of assisting another department's officers in a physical restraint or use-of-force encounter, including when and how an assisting officer must intervene once the force being used by another department's officer is no longer justified by the circumstances.

140. On information and belief, this training gap reflects a broader inadequacy in the Village of Pleasant Prairie's approach to preparing its officers for mutual aid responses to

neighboring jurisdictions, such that the absence of adequate training and supervision on this specific scenario amounts to deliberate indifference to the constitutional rights of individuals encountered during such responses.

141. This deliberate indifference was a moving force behind the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

142. As a direct and proximate result of the Village of Pleasant Prairie's and Chief Smetana's failure to train and supervise, Plaintiff suffered the injuries and damages described herein.

## COUNT IX

## INDEMNIFICATION PURSUANT TO WIS. STAT. § 895.46 AGAINST DEFENDANTS VILLAGE OF PLEASANT PRAIRIE AND POLICE CHIEF DAVID SMETANA

143. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

144. Wisconsin Statute § 895.46 requires a political subdivision to satisfy any judgment entered against its officer or employee where that individual is found to have acted within the scope of their employment, even where the conduct at issue was later determined to exceed the bounds of lawful authority.

145. Sgt. Lodygowski was, at all relevant times, an on-duty employee of the Village of Pleasant Prairie Police Department, acting within the course and scope of that employment during the events giving rise to Counts I and IV above.

146. Should Sgt. Lodygowski be found liable to Plaintiff on any count of this Complaint, Defendant Village of Pleasant Prairie is obligated under Wis. Stat. § 895.46 to satisfy that judgment on his behalf, and Defendant Police Chief David Smetana, in his official capacity, shares in that same statutory obligation as Sgt. Lodygowski's commanding official.

## COUNT X

## VIOLATION OF 42 U.S.C. § 1981 AGAINST DEFENDANTS WISCONSIN APPLE LLC, SBG APPLE NORTH XII, LLC, SBG APPLE NORTH I, LLC, APPLEBEE'S FRANCHISOR LLC, APPLEBEE'S RESTAURANTS LLC, AND DINE BRANDS GLOBAL, INC.

147. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

148. Under 42 U.S.C. § 1981, all persons have the same right to make and enforce contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property, as is enjoyed by white citizens, a right that extends to the enjoyment of the benefits, privileges, terms, and conditions of an existing contractual relationship, including the relationship formed when a patron is seated and served at a restaurant.

149. Plaintiff, an African American man, was seated and being served at the Applebee's restaurant located at 6950 75th Street, Kenosha, Wisconsin, on the evening of July 20, 2023, together with Boyd and their child, at the time the events described above occurred.

150. Restaurant staff directed responding officers specifically to the table where Plaintiff and his family were seated, and restaurant management separately provided officers with an account of how long Plaintiff's family had been present that understated the actual time elapsed, as alleged above.

151. On information and belief, Plaintiff and his family were the only Black patrons seated in the restaurant's dining area at the time these events occurred, and were treated differently in the course of the restaurant's response to the hit-and-run investigation than white patrons present in the restaurant that evening, including with respect to the continuation of ordinary restaurant service to Plaintiff's table.

152. On information and belief, Plaintiff's race was a motivating factor in the restaurant staff's decision to identify Plaintiff's family to police as matching the description of the fleeing suspects, and in the treatment described above, rather than that identification and treatment resulting solely from race-neutral factors.

153. But for Plaintiff's race, Applebee's staff would not have identified him and his family to police as matching the fleeing suspects.

154. As a direct and proximate result of this conduct, Plaintiff was denied the full and equal enjoyment of the benefits, privileges, terms, and conditions of his contractual relationship with the restaurant, and was thereby deprived of rights secured to him under 42 U.S.C. § 1981.

155. The conduct described above was undertaken by employees and agents of Defendant Wisconsin Apple LLC and/or SBG Apple North XII, LLC and/or SBG Apple North I, LLC, whichever entity operated the restaurant and employed its staff on the date in question, acting within the scope of their employment, such that liability for their conduct is properly attributed to that operating entity.

156. On information and belief, Defendant Applebee's Franchisor LLC, together with Defendants Applebee's Restaurants LLC and Dine Brands Global, Inc., exercised sufficient control over the training and operational standards governing the restaurant's staff, including guidance on interactions with law enforcement and the handling of customer disturbances, as alleged above, that these entities bear responsibility for the inadequacy of that training in preventing the discriminatory conduct described herein.

157. As a further direct and proximate result of the conduct described in this Count, Plaintiff suffered humiliation, mental anguish, emotional distress, and other damages.

158. In the alternative, Defendants Applebee's Restaurants LLC, Dine Brands Global, Inc., and Applebee's Franchisor LLC held the restaurant out to the public through common trademarks, signage, uniforms, menus, and advertising as part of an integrated Applebee's enterprise, without disclosing to patrons that it was independently owned and operated by a separate franchisee. Plaintiff reasonably believed he was patronizing an Applebee's-operated establishment and relied on that appearance in choosing to dine there. These Defendants are therefore liable under a theory of apparent or ostensible agency.

## COUNT XI

## DEFAMATION AND DEFAMATION PER SE AGAINST DEFENDANTS WISCONSIN APPLE LLC, SBG APPLE NORTH XII, LLC, AND SBG APPLE NORTH I, LLC

159. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

160. Restaurant staff communicated to responding police officers that English and his family matched the description of individuals suspected of fleeing the scene of a hit-and-run collision causing injury, a report that was false, as English had no involvement in that collision.

161. A false accusation that a person has committed a crime involving moral turpitude, including fleeing the scene of an injury-causing collision, constitutes defamation per se under Wisconsin law, entitling Plaintiff to presumed damages without proof of special harm.

162. The statement was of and concerning Plaintiff specifically, identifying him by his presence at a particular table, his physical description, and his association with Boyd and

their child, such that an officer hearing the statement in context would have understood it to refer to Plaintiff.

163. The statement was published to third parties, including the responding police officers and was not authorized or invited by Plaintiff.

164. To the extent Defendants contend the statement is subject to a qualified privilege applicable to good-faith reports of suspected criminal activity to law enforcement, Plaintiff alleges that any such privilege was abused and forfeited, in that restaurant management separately provided officers with an account of how long Plaintiff's family had been present that understated the actual time elapsed, an account inconsistent with information available to other restaurant staff who had directly interacted with Plaintiff's table, reflecting either knowledge of the statement's falsity or reckless disregard for its truth or falsity.

165. The statement was not a fair or accurate report of an official proceeding, was not true, and was not otherwise privileged.

166. As a direct and proximate result of this defamatory statement, Plaintiff was falsely identified to police as a criminal suspect, was subjected to detention, arrest, and the use of force described above, and suffered damage to his reputation, humiliation, and emotional distress.

167. The conduct described above was undertaken by employees and agents of Defendant Wisconsin Apple LLC and/or SBG Apple North XII, LLC and/or SBG Apple North I, LLC, whichever entity operated the restaurant and employed its staff on the date in question, acting within the scope of their employment, such that liability for their conduct is properly attributed to that operating entity under the doctrine of respondeat superior.

## PUNITIVE DAMAGES

168. Plaintiff hereby incorporates all preceding paragraphs as though fully set forth herein.

169. Plaintiff seeks punitive damages against Officer Vences, Officer Courtier, Officer Karaway, and Sgt. Lodygowski, in their individual capacities, under 42 U.S.C. § 1983, for their willful, malicious, and reckless disregard of Plaintiff's constitutional rights, as more fully described in Counts I through V above, and against Officer Roepke, in his individual capacity, under 42 U.S.C. § 1983, for the conduct described in Count II above.

170. Plaintiff further seeks punitive damages against the Applebee's Defendants under Wisconsin common law as to Count XI, and under 42 U.S.C. § 1981 as to Count X, in that the conduct described in those Counts was undertaken with malice, willfulness, or reckless indifference to Plaintiff's rights.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Jermelle English Jr. respectfully prays for the following relief:

a. Judgment in favor of Plaintiff and against each individual officer Defendant found liable on Plaintiff's federal civil rights claims arising under 42 U.S.C. § 1983, jointly and severally as among Defendants found liable for the same conduct, for compensatory damages in an amount to be determined at trial;

b. An award of punitive damages against Officer Vences, Officer Courtier, Officer Karaway, and/or Sgt. Lodygowski, in their individual capacities, and against Officer Roepke, in his individual capacity, for the reasons stated above;

c. Judgment in favor of Plaintiff and against Defendants City of Kenosha and Police Chief Patrick Patton, for compensatory damages, on Plaintiff's claim that the City's policies,

practices, and failure to train were the moving force behind the violation of his constitutional rights;

d. An order requiring Defendants City of Kenosha and Police Chief Patrick Patton, pursuant to Wis. Stat. § 895.46, to satisfy any compensatory judgment entered against Officer Vences, Officer Courtier, Officer Roepke, and/or Officer Karaway arising from acts committed within the course and scope of their employment;

e. Judgment in favor of Plaintiff and against Defendants Village of Pleasant Prairie and Police Chief David Smetana, for compensatory damages, on Plaintiff's claim that the Village's policies, practices, and failure to train were the moving force behind the violation of his constitutional rights;

f. An order requiring Defendants Village of Pleasant Prairie and Police Chief David Smetana, pursuant to Wis. Stat. § 895.46, to satisfy any compensatory judgment entered against Sgt. Lodygowski arising from acts committed within the course and scope of his employment;

g. Judgment in favor of Plaintiff and against Defendants Wisconsin Apple LLC, SBG Apple North XII, LLC, and SBG Apple North I, LLC, jointly and severally as among Defendants found liable for the same conduct, for compensatory damages on Plaintiff's claims for race discrimination and interference with contractual rights under 42 U.S.C. § 1981 and for defamation under Wisconsin common law, and for punitive damages as to those Defendants for the reasons stated above;

h. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988, as to Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983, and any other applicable fee-shifting provision;

i. An award of prejudgment and post-judgment interest as allowed by law;

j. Such other and further relief as this Court deems just and proper under the circumstances.

**PLAINTIFF HEREBY DEMAND A JURY TRIAL**

Dated this 19th day of July 2026.

**The LaMarr Firm, PLLC**

By: /s/ B'Ivory LaMarr
B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd Suite 1000
Houston, TX 77057
Phone: (800) 679-4600 ext. 700
Email:blamarr@bivorylamarr.com
*Attorney for Plaintiff*