UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JERMELLE ENGLISH, JR.,**

**Plaintiff,**

**v.** **Case No. 26-CV-1239**

**OFFICER MICHAEL VENCES, et al.,**

**Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS COUNT X OF FIRST AMENDED COMPLAINT

---

Jermelle English, Jr. alleges that while dining at a franchised Applebee's Restaurant in Kenosha, Wisconsin, he was falsely accused of a hit-and-run accident by employees of the franchisee and was then unlawfully restrained and arrested by law enforcement. (Docket # 3.) English sues multiple municipal defendants under 42 U.S.C. § 1983. (First Am. Compl., Counts I–IX.) English further sues several Applebee's corporate entities—Wisconsin Apple LLC, Applebee's Franchisor LLC, Applebee's Restaurants LLC, and Dine Brands Global, Inc.—under 42 U.S.C. § 1981 and for state law defamation. (*Id.*, Counts X, XI.) Dine Brands Global, Applebee's Restaurants, and Applebee's Franchisor (collectively the "franchisor defendants") move to dismiss Count X of English's complaint on the grounds that these entities cannot be held vicariously liable for the actions of its franchisee under § 1981. (Docket # 21.) For the reasons explained below, the franchisor defendants' motion to dismiss is denied.

## BACKGROUND

English alleges that on July 20, 2023, at around 11 p.m., he was dining with Shanya Boyd[1] and their one-year-old child at an Applebee's restaurant in Kenosha, Wisconsin. (First Am. Compl. ¶ 25.) At the same time, the Kenosha Police Department ("KPD") responded to a vehicle collision at the intersection of Highway 31 (Green Bay Road) and Highway 50, where a rollover crash between two vehicles had occurred. (*Id.* ¶ 26.) Several individuals from a red sedan fled the crash scene on foot, heading westbound toward nearby businesses, including Applebee's. (*Id.*) Based on witness statements and suspicions that the fleeing occupants may have entered the restaurant, law enforcement responded to Applebee's and began checking patrons and the men's bathroom for potential suspects. (*Id.* ¶ 27.) Restaurant staff called law enforcement to report that a group matching the suspects' descriptions were present and, upon the officers' arrival, an Applebee's employee directed them to the booth where English was sitting. (*Id.* ¶ 28.)

English alleges that an officer asked restaurant staff how long English's group had been seated, and the manager on duty falsely told him that the group had arrived approximately twenty minutes prior, despite the fact they had arrived closer to one hour before. (*Id.* ¶ 29.) English asserts that at the time these events occurred, English and Boyd were the only Black patrons seated in the dining area of the restaurant. (*Id.* ¶ 30.) English alleges that an officer seized him while he was holding his one-year-old child and subjected him to a physical escort hold. (*Id.* ¶ 31.) English alleges that the encounter quickly escalated into a physical struggle and an officer grabbed him by the hair in an attempt to control him. (*Id.* ¶ 32.) English states

[1] Boyd brings a separate lawsuit arising out of this incident on behalf of herself and her minor child. *Boyd v. City of Kenosha*, *et al.*, Case No. 24-CV-919 (E.D. Wis.).

that another officer moved to block English's path while the first officer took hold of English to prevent him from continuing to walk away. (*Id.* ¶ 33.)

English alleges that despite his best efforts, officers ultimately succeeded in loosening his grip of his child and an Applebee's employee took the child and carried him away from the immediate area. (*Id.* ¶ 34.) Once the child was removed from English's arms, an officer performed a "secure the head" decentralization maneuver, forcing English to the ground, and proceeded to deliver multiple strong hand and forearm strikes, including strikes to English's head, in an effort to gain compliance and secure his hands. (*Id.* ¶ 35.) English alleges that he was repeatedly struck while subdued on the floor and not posing an imminent threat to anyone's safety. (*Id.* ¶¶ 36–38.)

English states that he was placed on a medical gurney for transport and was handcuffed to the gurney. (*Id.* ¶ 39.) He further alleges that Boyd also attempted to intervene and was also met with a "violent takedown" by officers, resulting in her own arrest and physical injury. (*Id.* ¶ 40.) Following the arrests of English and Boyd, an officer contacted Wisconsin's child protective services access line regarding placement of the child. (*Id.* ¶ 41.) The officer then engaged in a heated, confrontational exchange with the child's grandmother, Tekesisha Boyd, in which he referenced the potential involvement of Child Protective Services and the possibility that the child could be placed outside the family. This contributed to the escalating tension during the encounter. (*Id.*) A caseworker ultimately determined that the child would be released to a different relative. (*Id.* ¶ 42.)

English was arrested for resisting and disorderly conduct, with the added threat of losing custody of his child pending conviction. (*Id.* ¶ 43.) He alleges that both his family and the restaurant's employees stated that they had been inside the restaurant the entire time,

indicating that the officers had apprehended the wrong individuals for the hit-and-run incident. (*Id.* ¶ 44.) English asserts that the individuals actually involved in the hit-and-run collision entered the restaurant through a different entrance than the one English's family had used, went directly to a restroom without passing through the dining area, had no contact with English, Boyd, or their table at any point before officers located them, and were the same suspects ultimately found hiding in the restaurant's bathroom. (*Id.* ¶ 45.)

English alleges that an internal investigation by the KPD found that multiple of the officer's strikes were unreasonable and violated department policy. (*Id.* ¶¶ 46–50.) Another officer involved in the incident received a 10-day suspension. (*Id.* ¶ 51.) English states that the criminal charges filed against him arising from this incident were dismissed on the prosecutor's motion on December 20, 2023. (*Id.* ¶ 52.) English alleges that he has suffered damages due to the defendants' actions. (*Id.* ¶¶ 53–58.)

English asserts that the Applebee's restaurant where this incident occurred operated under a franchise relationship in which Applebee's Franchisor (as franchisor) had a franchise agreement with Wisconsin Apple (as franchisee). (*Id.* ¶ 18.) English alleges that the franchise agreement specifically required that the restaurant's managerial staff be trained on protocols for interacting with law enforcement and for handling suspected criminal activity by patrons, distinct from the agreement's separate and more general provisions governing food preparation, signage, and marketing. (*Id.* ¶ 19.) He asserts that Applebee's Restaurants and/or Dine Brands Global, entities "higher in the corporate structure," drafted or approved the specific protocols Applebee's Franchisor required for staff interactions with law enforcement and handling of suspected criminal activity, as distinct from general brand and quality

standards, and thereby retained a right of control over the specific practice alleged to have caused English's injuries. (*Id.* ¶¶ 20, 59.)

**STANDARD OF REVIEW**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

English sues Wisconsin Apple, Applebee's Franchisor, Applebee's Restaurants, and Dine Brands Global, under 42 U.S.C. § 1981. Section 1981 protects the right of all persons "to make and enforce contracts" regardless of race. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008). To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Wisconsin Apple, the alleged franchisee, does not move to dismiss Count X. Rather, Applebee's Franchisor, Applebee's Restaurants, and Dine Brands Global (the alleged franchisors) move to dismiss Count X on the grounds that English fails to plead a plausible theory of franchisor liability. (Docket # 22.)

As an initial matter, the legal basis for English's theory of liability is far from clear. Both parties cite Wisconsin law regarding a franchisor's vicarious liability for the tortious conduct of its franchisee as the applicable legal standard. (Docket # 23 at 3–4; Docket # 28 at 6–8, both citing *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, 273 Wis. 2d 106, 682 N.W.2d 328.) But this action is not before the Court based on diversity jurisdiction, and English does not sue the franchisor defendants in tort. Rather, English brings a federal civil rights claim pursuant to § 1981. Thus, it is unclear whether Wisconsin law would apply to this claim. *See*

*Phillips v. Mega Concrete Constr., LLC*, No. 20-CV-658, 2022 WL 252100, at *5 (W.D. Wis. Jan. 27, 2022) (noting that a § 1981 claim is a "federal claim, so federal law applies"). And even if state law does apply, the franchise agreement the franchisor defendants append to their motion states that, to the extent Kansas law does not conflict with the local franchise statutes, Kansas law governs all questions which arise with reference to the agreement. (Docket # 23-1 at 34–35, § 21.2.)

Further, the parties have not cited, nor have I found, any Seventh Circuit Court of Appeals case addressing the issue of franchisor liability in general, much less in the context of a § 1981 claim. Rather, where the viability of vicarious liability in the context of § 1981 has arisen is in the context of an employment relationship. In such cases, courts have found that "section 1981 . . . support[s] a claim based on the vicarious liability of an employer for the acts of his agent." *See Malone v. Schenk, Jr.*, 638 F. Supp. 423, 424–25 (C.D. Ill. Dec. 2, 1985) (collecting cases).

Thus, neither the Wisconsin law of franchisor liability nor the § 1981 law of vicarious liability cleanly fits the situation before me. Assuming, however, that Wisconsin law as cited by the parties does apply, the Wisconsin Supreme Court in *Kerl* makes clear that a franchisor-franchise relationship is "quite different from a contract of employment" and for this reason, the "usual justifications for vicarious liability lose some force in the franchising context." 2004 WI 86, ¶¶ 31–32. This is because the "control" of the franchisor typically "does not consist of routine, daily supervision and management of the franchisee's business, but, rather, is contained in contractual quality and operational requirements necessary to the integrity of the franchisor's trade or service mark." *Id.* ¶ 34. As such, the *Kerl* court found that the "clear trend" in the case law of other jurisdictions is that "the quality and operational standards and

inspection rights contained in a franchise agreement do not establish a franchisor's control or right of control over the franchisee sufficient to ground a claim for vicarious liability as a general matter or for all purposes." *Id.* ¶ 36.

The *Kerl* court noted, however, that these courts did carve out a narrow exception for vicarious liability by adapting the traditional "right to control" test to focus on whether the franchisor controlled the specific aspect of the franchisee's business alleged to have caused the plaintiff's harm. *Id.* ¶ 39. The *Kerl* court concluded that "a franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." *Id.* ¶ 43.

Assuming, then, that a similar standard applies in the context of a § 1981 claim, English alleges that the parties' franchise agreement specifically required that the restaurant's managerial staff be trained on protocols for interacting with law enforcement and for handling suspected criminal activity by patrons. (First Am. Compl. ¶ 19.) The franchisor defendants argue, however, that this "sole fact" upon which English seeks to assert vicarious liability is "entirely made up." (Docket # 23 at 2.) They note that English does not attach the relevant franchise agreement to his complaint despite the fact that his "entire vicarious liability argument rests upon the franchise agreement." (*Id.* at 6.) Thus, in support of their motion, the franchisor defendants include a copy of a franchise agreement between Applebee's Franchisor and Wisconsin Apple (Docket # 23-1) and assert that such "law enforcement" provision appears nowhere in the document (Docket # 23 at 5).

In response, English argues that he is not claiming that the alleged provision is contained in the "visible body" of the franchise agreement; rather, he argues that it appears

in manuals and training materials that are incorporated by reference into the contract. (Docket # 28 at 12–13.) English further contests the applicability of the attached agreement, noting that the agreement defendants attach has an end date of July 31, 2020 (Docket # 23-1 at 4), before the alleged July 20, 2023, incident occurred. (Docket # 28 at 2.)

In considering a motion to dismiss under Rule 12(b)(6), courts are free to consider "any facts set forth in the complaint that undermine the plaintiff's claim" including "exhibits attached to the complaint" or "documents referenced in the pleading if they are central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (internal quotations and citations omitted). Thus, if an exhibit "incontrovertibly contradicts the allegations in the complaint," the exhibit ordinarily controls, even on a motion to dismiss. *Id.* That is not the situation here. The agreement the franchisor defendants append to their motion indeed contains a provision incorporating by reference and making part of the agreement "the Franchise Operations Manual" or "such other materials or manuals provided or made available by Franchisor to Franchisee" and states that the franchisor can amend these manuals in its sole discretion. (Docket # 23-1 at 10, §§ 5.4, 5.5.) The agreement also contains conflicting provisions regarding the agreement's effective date—stating that it runs from either September 30, 2019, until July 31, 2020, or from September 30, 2019, until twenty years later. (*Id.* at 4, 7, § 1.2.) Because English disputes whether this is both the entire agreement and the effective agreement, I cannot rely on this document in deciding the motion to dismiss.

Thus, considering the allegations in the complaint, I cannot say that English fails to plead a facially plausible claim of vicarious liability against the franchisor defendants. English alleges that under the franchise agreement, the franchisor has the right of control over the daily operation of the specific aspect of the franchisee's business alleged to have cause him

harm—how staff handle suspected criminal activity by patrons and interact with law enforcement. For these reasons, the franchisor defendants' motion to dismiss Count X is denied.

Finally, I bring to the parties' attention an error on the part of the clerk's office in assigning this case. When the complaint in this case was filed, English noted on his Civil Cover Sheet a related case pending before Magistrate Judge Duffin, 24-CV-919. (Docket # 1-6.) Consequently, under this district's local rules, the present case should have been assigned to Judge Duffin. Civil L. R. 3(b)(4) (E.D. Wis.). Indeed, upon review of the third amended complaint in that case, *Boyd v. City of Kenosha, et al.*, the action is brought by Boyd, English's companion during the alleged July 20, 2023, incident at the Kenosha Applebee's. Boyd raises similar claims against the same defendants, including a violation of § 1981 against the same defendants at issue in this motion. Boyd likewise brings a defamation claim against the Applebee's defendants as well as § 1983 claims against the municipal defendants.

Pursuant to Civil L.R. 3(c)(4), if a judge "believes that a case pending before that judge is related to a lower-numbered case pending in this District, the judge may refer the case to the judge assigned to the lowest-numbered case with a request that the judge assigned to the lowest-numbered case consider whether the cases are related." The parties are allowed to file any opposition to or support for reassigning the case. *Id.* In determining whether the case should be reassigned, the court considers factors such as judicial economy, avoiding delay, and avoiding inconsistent or conflicting results. *See* Civil L.R. 3(c)(1). These cases appear to meet the definition of "related" under Civil L.R. 3(b)(1) as they arise from the same events, involve substantially the same parties, and could result in substantial duplication of effort or

risk of inconsistent results if heard by different judges. The parties should be prepared to discuss this issue at the Rule 16 conference.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss (Docket # 21) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal (Docket # 20) is **GRANTED**.

**FINALLY, IT IS ORDERED** that the clerk's office will contact the parties for further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 7th day of October, 2026.

BY THE COURT:

Nancy Joseph

____________________________
NANCY JOSEPH
United States Magistrate Judge